IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN DARNELL FINKLEA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW M. SAUL,[1] | : | |
| Commissioner of Social Security | : | |
| Administration | : | NO. 19-6 |

**<u>MEMORANDUM OF DECISION</u>**

THOMAS J. RUETER  
United States Magistrate Judge                                             October 24, 2019

Plaintiff, Kevin Darnell Finklea, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").

Plaintiff filed a Brief and Statement of Issues in Support of Request for Review (Doc. 17) ("Pl.'s Br.") and defendant filed a Response to Plaintiff's Request for Review (Doc. 20) ("Def.'s Br."). For the reasons set forth below, the court recommends that plaintiff's Request for Review be **DENIED**.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on March 23, 2015, alleging disability beginning May 31, 2014. (R. 193-201.) Plaintiff's claims were denied initially and upon reconsideration; he then filed a timely request for a hearing. (R. 97-138.) A hearing was held on

---

[1]      On June 4, 2019, Andrew M. Saul became the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted as the defendant in this case.

January 12, 2018, before Administrative Law Judge ("ALJ") Marc Silverman. (R. 29-96.)
Plaintiff, represented by counsel, appeared and testified. Vanessa Ennis, a vocational expert ("VE"), also testified. During the administrative hearing, plaintiff's counsel requested that the alleged onset date be amended to June 19, 2015. (R. 72-73.)[2] In a decision dated February 9, 2018, the ALJ found that plaintiff was not disabled under the Act. (R. 11-29.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since June 19, 2015, the amended alleged onset date. (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Disorder of the back (Exhibit 3F, page 10) – lumbar spine x-rays taken April 14, 2015 show moderate degenerative changes at L5-S1 with mild degenerative changes at all other levels (Exhibit 2F, pages 99, 66); plantar calcaneal spur, right foot (Exhibit 3F, page 8); enthesophye at Achilles insertion, left foot (Exhibit 3F, page 9); bilateral knee disorder (Exhibit 2F, page 100 – bilateral knee x-rays show moderate degenerative changes); and depression (Exhibit 2F, page 73) (20 CFR 404.1520(c)). The claimant has the following nonsevere impairments: diabetes mellitus (Exhibit 2F); history of alcohol abuse, in remission (Exhibit 2F, page 73, Exhibit 4F, page 433); history of cocaine abuse, in remission (Exhibit 2F, page 73, Exhibit 4F, page 433); obstructive sleep apnea and the claimant was prescribed CPAP; Exhibit 4F, page 101 reported he uses CPAP sporadically); and tenderness along the bilateral metatarsal heads most consistent with metatarsalgia (Exhibit 3F, page 4). The consultative examiner observed that the claimant was able to ambulate without much difficulty, no significant swelling of the bilateral feet, and good range of motion of both feet.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

---

[2] Because plaintiff amended the alleged onset date during the administrative hearing, the administrative record contains evidence that predates the relevant time period, plaintiff's amended alleged onset date to the date last insured.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can never climb ladders, ropes, or scaffolds; can climb ramps and stairs occasionally; he has no limitation as to balancing; can stoop, kneel, and crouch occasionally; can never crawl; and is limited to simple, routine tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 6, 1964 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school education, and additional vocational training, and is able to communicate in English (20 CFR 404.1564).

9. The claimant has no transferable job skills (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2015, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 17-24.)

Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner. (R. 1-8, 135-38.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g)), cert. denied, 571 U.S. 1204 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is

defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. § 404.1520.[3] This process requires the

---

[3]  For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision on February 9, 2018.

Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. See id. The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 201 (3d Cir. 2019).

## III. BACKGROUND

At the commencement of the January 12, 2018, administrative hearing, plaintiff's counsel and the ALJ discussed the admission of additional medical evidence into the administrative record. (R. 32-37.) Plaintiff, who is single and has no children, testified that he has a high school diploma with additional vocational training. (R. 39, 57.) When asked to describe the impairments which render him unable to work, plaintiff described pain in his neck, lumbar spine, knees, ankles, and feet. (R. 39-40, 61.) Plaintiff explained that he was found to have "severely flat feet" which resulted in the termination of his service in the United States Army. (R. 40, 61.) Plaintiff stated that his neck and back impairments cause him to be cautious about his movements, for fear of suffering a re-injury. (R. 43.) Plaintiff lives alone in a third-floor apartment. (R. 41, 52.) He has difficulty climbing the stairs to his apartment because he becomes winded. (R. 43.) He also experiences knee pain after ascending and descending the stairs. (R. 44.)[4] Plaintiff has insomnia and sleep apnea, and uses a CPAP machine

---

[4] Changes in the weather exacerbate plaintiff's pain symptoms. (R. 62.) Plaintiff was prescribed Tylenol to treat the pain symptoms. (R. 64.)

5

approximately three days per week. (R. 41-43.) Plaintiff also reported prostate issues which cause frequent urination. (R. 61.) Additionally, plaintiff is an insulin-dependent diabetic. (R. 62.) He acknowledged that at the time of the administrative hearing, his diabetes was not controlled with medication and that he needed to make changes to his diet. (R. 63.)

At the time of the administrative hearing, plaintiff weighed 330 pounds. (R. 56.) He indicated that his normal weight should be approximately two hundred and thirty-five pounds. Id. He has not been at his target weight since 2000. (R. 57.) Plaintiff attributes the weight gain to his left and right foot disabilities and "not being able to play basketball, run and jump." Id. Plaintiff has never had a driver's license, but utilizes public transportation. (R. 52, 57.) Plaintiff described food shopping as "very cumbersome." (R. 52.) He stated, "I used to lift weights and so I was used to carrying heavy things but now age has taken a toll on me," noting that he has circulation problems in his hands. Id. Plaintiff walks seven to eight blocks to the grocery store and utilizes a shopping cart to transport the groceries. (R. 52-53, 65-66.) He uses a cane to assist with walking at times and had done so for four to five years. (R. 64-65.)[5] Plaintiff indicated that "weightlifting used to be a main hobby" but he stopped weightlifting sometime in 2017. (R. 54.) Plaintiff indicated that he was experiencing back problems at that time and that he was advised by a doctor to rest and stop going to the gym. Id. Plaintiff estimated that he can lift a maximum of thirty pounds. (R. 44.) Due to circulatory problems and stiffness, plaintiff estimated that he can sit for a maximum of two hours and that he can stand for a maximum of three hours. (R. 66-67.)

---

[5] Plaintiff testified that he was prescribed the use of a cane to assist with ankle weakness. (R. 75-76.) He does not use the cane on a daily basis, but indicated that he "probably should use it all the time." (R. 76.)

With respect to his daily activities, plaintiff stated that his physical activities have been limited due to an inability to walk far or stand for a length of time. (R. 55.) As a result, plaintiff does not often go outside and noted that his physical impairments have limited his social life. Id. When asked how he spends his days, plaintiff stated that he cooks, cleans, reads, sleeps, and meditates. Id. Plaintiff noted that he lives in a large apartment which he keeps tidy by mopping, dusting, wiping down, and straightening up. (R. 67-68.) He explained that he must pace himself in order to complete these tasks and may not complete a task from beginning to end at one time. (R. 68.) Plaintiff must walk up and down three flights of stairs to complete his laundry. (R. 68-69.) Plaintiff confirmed that he has difficulty showering and dressing due to a limited range of motion caused by back pain. (R. 69-70.) Plaintiff indicated that he does not visit with friends or family, but acknowledged that his brother visits him "every now and then but that's every blue moon." (R. 69.) Plaintiff stated that he does not "get out much." Id.

Plaintiff receives medical care at the VA hospital, specifically from a primary care physician and a podiatrist. (R. 58.) He also receives treatment from a psychiatrist with whom meets every three months for medication management. Id. He participated in group therapy sessions until he was told to no longer participate because he had completed all of the coursework. (R. 58-59.) He meets with a social worker in a group setting on a weekly basis, and had been doing so for three years. (R. 59.)[6]

With respect to his past work, plaintiff last worked as a security guard until July 2015, when his employment was terminated. (R. 51-52.) Prior to that job, plaintiff worked as a security guard for U.S. Security for twelve years. (R. 46.) Plaintiff explained that his employer

---

[6] Plaintiff also testified that he recently began treatment at Mercy Health System and that the physician there ordered him to undergo x-ray studies and to have bloodwork completed. (R. 70-71, 74-75.)

7

accommodated his physical restrictions by giving him jobs that allowed him to sit for two to three hours, and walk the rest of his shift. (R. 46-47.) Plaintiff also worked as a greeter at a Marshall's department store for approximately two years. (R. 48.) In this position, plaintiff also performed some functions of a security guard. (R. 48-49.)

At the commencement of the VE's testimony, the ALJ reviewed the VE's qualifications and familiarity with various publications upon which the VE would base her occupational and vocational data. See R. 79-81. The VE then testified that plaintiff's past work as a security guard was a composite job, comprised of work as a security guard and as a desk security clerk. (R. 82.) Plaintiff's work as a greeter at Marshall's department store was also a composite job, comprised of work as a greeter and work as a surveillance systems monitor. (R. 83.) The ALJ asked the VE to consider a hypothetical individual who can perform work at the light exertional level, but who can never climb ladders, ropes or scaffolds; can climb ramps and stairs occasionally; has no limitation with respect to balancing; can stoop, kneel, and crouch occasionally; can never crawl; and who is limited to simple, routine tasks. (R. 84.) The VE opined that of plaintiff's past jobs, the hypothetical individual only could perform plaintiff's past work as a surveillance system monitor. Id. However, the VE also opined that the hypothetical individual could perform the following unskilled, light jobs: information clerk (for which there are approximately 110,000 jobs in the national economy); laundry sorter (for which there are approximately 200,000 jobs in the national economy); and routing clerk (for which there are approximately 400,000 jobs in the national economy). (R. 85.) The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Id.[7]

---

[7] The ALJ posed a second hypothetical question to the VE which retained the same factors as the first hypothetical question, but further imposed a sit/stand option, defined as "being able to change positions at the work stations, one to two times an hour without interfering with work

## IV. DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has severe impairments, but none of which meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-20.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform light work as detailed in his decision. See R. 20. Pursuant to the Commissioner's regulations, RFC refers to the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a). The RFC assessment must be based upon all relevant evidence, including medical records, medical source opinions, and a claimant's description of his own symptoms. The final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. § 404.1527(d).[8] See also

---

tasks for more than two to three minutes at a time." (R. 86.) The VE opined that such individual could perform the surveillance systems monitor job. Id. In addition, the VE opined that the hypothetical individual could perform the following unskilled, sedentary jobs: information clerk (for which there are approximately 270,000 jobs in the national economy); addresser (for which there are approximately 100,000 jobs in the national economy); and table worker (for which there are approximately 240,000 jobs in the national economy). (R. 86-87.) The VE confirmed that this information was also consistent with the DOT. (R. 87.) Furthermore, the VE confirmed that the hypothetical individual could perform the surveillance systems monitory position if the individual were off-task no more than ten percent of the workday. (R. 88.) However, the VE opined that the hypothetical individual could not perform any work if he were off-task fifteen percent of the day. Id. The VE clarified that the DOT does not address the percentage of time spent off-task that would preclude employment, and her testimony was based upon her experience and knowledge as a VE. (R. 88-89.) Plaintiff's counsel then posed several follow-up questions to plaintiff, clarifying his job duties during his employment at Marshall's department store to determine whether plaintiff's work there was properly classified as a surveillance systems monitor. See R. 89-92. In addition, plaintiff's counsel posed several follow-up questions to the VE. See R. 94-95.

[8] The court notes that 20 C.F.R. § 404.1527, rather than 20 C.F.R. § 404.1520c, applies because plaintiff's claim was filed before March 27, 2017.

20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity.").

Plaintiff presently contends, however, that substantial evidence does not support the ALJ's decision. According to plaintiff, the ALJ improperly evaluated the evidence of plaintiff's mental impairment,[9] specifically the opinion of Janice Calderon Psy.D., a State agency psychological consultant.[10] (Pl.'s Br. at 4-15.) Plaintiff avers that the ALJ erred by improperly rejecting the social limitations opined by Dr. Calderon and by failing to account for all of the practical effects of plaintiff's mental impairments in the RFC. Id. However, plaintiff's argument does not find support in the Commissioner's regulations, Third Circuit case law, nor the record in this case.

In reaching the conclusion that plaintiff retains the RFC to perform a limited range of light work, the ALJ offered a comprehensive assessment of the evidence of record. See R. 18-22. That is, the ALJ considered plaintiff's testimony at the administrative hearing and summarized the medical record evidence in detail. (R. 19-21.) In addition, the ALJ analyzed

---

[9] In his request for review, plaintiff raised no issues pertaining to the physical aspects of the ALJ's RFC determination.

[10] The court notes that Dr. Calderon's opinion appears in the record as part of the Disability Determination Explanation form which was prepared for plaintiff's DIB claim at the reconsideration level. See R. 113-128. In a notation dated November 24, 2015, Dr. Calderon indicated that she had reviewed the evidence in the file and affirmed the assessment of plaintiff's mental limitations that was drafted by Sharon Flaherty in the Disability Determination Explanation form for plaintiff's DIB claim at the initial level. See R. 98-111. Dr. Calderon offered the following explanation, "Claimant no alleges mental worsening, only physical worsening. Claimant no send new evidence of mental treatment, no has psychiatrist hospitalizations. I adopt the initial [Psychiatric Review Technique Form]." See R. 119, 120, 125. Sharon Flaherty completed a Psychiatric Review Technique form dated June 6, 2015, in which she considered whether plaintiff's mental impairments constitute medically determinable impairments and considered the relevant listings. See R. 103-04. Ms. Flaherty also completed a Mental Residual Functional Capacity ("MRFC") assessment wherein she assessed plaintiff's ability to perform sustained work activities. See R. 106-09.

plaintiff's claims regarding the intensity, persistence and limiting effects of his symptoms in light of the record evidence. (R. 21.) The ALJ also considered and analyzed the opinion evidence. (R. 21-22.) Here, Dr. Calderon's opinion lists certain individual functional limitations that ultimately were not included in the RFC assessment. See R. 113-128.[11] Ultimately, the ALJ attributed "partial weight" to the opinion of Dr. Calderon, discounting the opinion to the extent that it did not find support in the record. See R. 22.

Generally, the Commissioner's regulations dictate that an ALJ must give medical opinions the weight he deems appropriate based on factors such as whether the physician

---

[11] The MRFC assessment, drafted by Ms. Flaherty at the initial review level and subsequently adopted by Dr. Calderon on reconsideration, reflects the following limitations: plaintiff was not significantly limited in his ability to remember locations and work-like procedures, moderately limited in his ability to understand and remember very short and simple instructions, and markedly limited in his ability to understand and remember detailed instructions. (R. 107.) In addition, plaintiff was assessed as markedly limited in his ability to carry out detailed instructions, and moderately limited in his ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Id. Plaintiff was also found to be moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Id. Plaintiff was not significantly limited in his ability to sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, and make simple work-related decisions. Id. With respect to social interaction limitations, plaintiff was found to be markedly limited in the ability to interact appropriately with the general public; moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and not significantly limited in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. 108.) With respect to his ability to adapt, plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting and his ability to travel in unfamiliar places or use public transportation, and not significantly limited in his ability to be aware of normal hazards and take appropriate precautions and in his ability to set realistic goals or make plans independently of others. Id. Furthermore, Ms. Flaherty offered the following additional explanation, "[f]rom a psych standpoint, [the claimant] can sustain focus, memory, basic social interaction and mental pace/persistence for simple, routine tasks." Id. This explanation was reiterated by Dr. Calderon. See R. 123-25.

11

examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 404.1527. The regulations further direct that the ALJ must consider the supportability of an opinion in deciding the weight to give that opinion. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). The Third Circuit recently reiterated the well-established standards for weighing opinion evidence. The court stated, "[a]n ALJ may "weigh the [conflicting] medical evidence and draw his own inferences." Brunson v. Comm'r of Soc. Sec., 704 F. App'x 56, 59 (3d Cir. 2017) (not precedential) (internal citations omitted). Furthermore, in assessing the medical evidence, "[a]n ALJ may accept some portions of a medical source's opinion while rejecting other opinions from the same source." Connors v. Berryhill, 2017 WL 4400758, at *5 (E.D. Pa. Sept. 29, 2017). In the present case, the ALJ's analysis was congruent with these standards.

Prior to discussing the opinion evidence, the ALJ presented a thorough analysis of the medical records which demonstrates that the evidence does not support the extent of the functional mental limitations claimed by plaintiff. When explaining that plaintiff's impairments do not meet the paragraph B criteria of Listing 12.04, the ALJ discussed in detail the limitations and abilities that plaintiff himself listed in his Function Report and also considered the medical evidence pertaining to plaintiff's mental health treatment. That is, the ALJ stated in relevant part:

> In understanding, remembering, or applying information, the claimant has a mild limitation. In the claimant's Function Report, he reported an ability to do some

basic household chores, such as cleaning, housekeeping, laundry, shopping, and preparing meals (Exhibit 8E, pages 2-3). To the extent he alleged limitations, they were due to physical impairments. The claimant was able to use public transportation (Exhibit 8E, page 4). As for his memory, he was able to follow written and spoken instructions "alright" (Exhibit 8E, page 6). In terms of his finances, he was able to pay bills, count change, handle a savings account, and use a checkbook/money orders (Exhibit 8E, page 4). The Third Party Function Report from the claimant's case manager, Ms. Deborah Nicholson, also reported he was able to perform the tasks of managing money and use public transit and use the facility van (Exhibit 9E, page 4). He testified at the hearing to his ability to cook, clean, read, and shop.

In interacting with others, the claimant has a mild limitation. In his Function Report, the claimant reported that he regularly went to sports events, NA meetings, and social groups (Exhibit 8E, page 5). He indicated that he had no problem getting along with family, friends, neighbors, or others (Exhibit 8E, page 6). He was able to use public transit and the facility van (Exhibit 8E, page 4, Exhibit 9E, page 4). The VAMC records noted group therapy attendance.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. It is reasonable to conclude the claimant's pain may affect his ability to concentrate. However, his concentration was good on mental status exams at the VAMC. For example, in a March 31, 2015 mental health progress note by Mariana Mendez-Tadel, M.D., an unremarkable mental status exam was reported (Exhibit 2F, page 71). On March 25, 2016, his concentration was good and the mental status exam was otherwise normal (Exhibit 4F, page 415). On April 8, 2016, there was another normal mental status exam with good concentration (Exhibit 4F, pages 406-407). On May 13, 2016, his concentration was good with a normal mental status exam (Exhibit 4F, page 383). Another visit on May 20, 2016 revealed good concentration and a normal mental status exam (Exhibit 4F, page 379). On March 21, 2017, another mental status exam was unremarkable (Exhibit 4F, pages 179-180). On July 24, 2017, there was another unremarkable mental status exam (Exhibit 4F, page 95). The claimant reported his ability to pay attention depended on his pain in his Function Report (Exhibit 8E, page 6). To repeat, he was able to handle his finances. He testified to his ability to cook, clean, read, and shop.

As for adapting or managing oneself, the claimant has experienced no limitation.

(R. 19.)

When considering the evidence in the context of the RFC explanation, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence,

13

and limiting effects of these symptoms are not entirely consistent with the medical evidence. Id. In support of this conclusion, the ALJ noted that "the SSA field office employee on March 23, 2015 did not observe any physical or mental difficulties during the interview (Exhibit 2E)." (R. 21.) The ALJ then again compared and contrasted plaintiff's claims with the evidence of record, including specific citations to the record evidence. See id. The ALJ stated:

> The mental limitations alleged by the claimant on the two Function Reports, and at the hearing, are not supported by the essentially unremarkable mental status examinations in the VA records. The physical limitations alleged by the claimant on the two Function Reports, and at the hearing, including that he cannot stand for a long periods of time and that walking is a problem (Exhibit 8E), are not supported by the opinion of clinical findings/observations of the consultative examiner (Exhibit 3F) and VA medical record report that the claimant is exercising regularly four times a week at the gym and does 8-12 miles on the machines each time (Exhibit 4F, pages 406-407). In March 2016, he was going to the gym three times a week and felt stronger (Exhibit 4F, page 415).
>
> Little weight is given to the statements of the case manager, Ms. Deborah Nicholson, in the Third Party Function Report (Exhibit 9E) to the extent that they are internally inconsistent. Ms. Nicholson saw the claimant 1-2 times a week while he was living in transitional housing for veterans. She assisted him with case management/social services activities. As for the internal inconsistencies, she did not check off boxes to indicate any mental limitations (Exhibit 9E, page 6), but stated the claimant needed to be retargeting to complete tasks with respect to written and spoken instructions.

Id.

With respect to the opinion of Dr. Calderon specifically, the ALJ reasoned that the opinion was afforded partial weight because it was not supported by the record. The ALJ stated:

> A State agency psychologist, Janice Calderon, Psy.D., reviewed the evidence and assessed mild to moderate limitations in the paragraph B criteria (Exhibit 3A). Partial weight is given to her assessment to the extent it is consistent with the record, but no weight is given as to the opinion of moderate difficulties in maintaining social functioning (which was based on old standards of assessing the paragraph B criteria) and no weight as to the opinion in the mental residual functional capacity assessment of marked limitation as to his ability to interact with the general public, and a moderately limited ability to interact with

14

supervisors and co-workers. The record, including the consultative examiner's observations and multiple unremarkable mental status exams, shows no limitation in the ability to interact appropriately with others. The claimant reported that he uses public transportation and shops in stores (Exhibit 8E, page 4). No weight is given to the State agency psychologist's opinion of a moderately limited ability to respond to changes in the work setting, because there was no support given for this conclusion and there is no support in the record.

(R. 22.)

Contrary to plaintiff's assertions, the ALJ's thorough written decision demonstrates that the ALJ acted in accordance with the precepts of the Commissioner's regulations and Third Circuit case law when he explained his reasons for weighing the opinion evidence in the manner he did. As the Third Circuit recently found, "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." Hess, 931 F.3d at 209. The court further noted that social security regulations permit, and indeed require, an ALJ to offer "a narrative discussion describing how the evidence supports each" limitation at step four of the disability analysis. That suggests a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained." Id. (internal quotation and citation omitted). Additionally, the court explained that the functional limitation findings at steps two and three, while important to the RFC analysis, "do not dictate the terms of the ALJ's statement of the claimant's limitation" at steps four and five. Id. at 209-210.

Here, the ALJ's decision comports with these standards. The decision sets forth in great detail at step three the treatment records that document multiple unremarkable mental status exams and plaintiff's self-reported functional capabilities. See R. 19. The decision also discusses in the RFC analysis that the ALJ considered plaintiff's testimony at the administrative

15

hearing, plaintiff's Function Reports, the medical record evidence, and the opinion evidence. (R. 21-22.) In addition, the ALJ compared and contrasted plaintiff's claims regarding the intensity, persistence and limiting effects of his symptoms in light of the record evidence and opinion evidence. Id. The ALJ's decision explains that certain individual findings in Dr. Calderon's opinion do not find support in the record. Thus, the ALJ offered a valid explanation for his determination that the limitation to simple, routine tasks adequately encompassed plaintiff's mental impairments. See Hess, 931 F.3d at 213-14 (ALJ must offer a valid explanation for the limitations included in the RFC assessment).

In any event, Dr. Calderon's ultimate conclusion actually supports the ALJ's RFC assessment. That is, the MFRC form indicates that the individual findings of functional limitation do not solely comprise the opinion contained therein. The form states: "The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is record in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation.)" (R. 107, 123.) Here, at the initial level of review, Ms. Flaherty offered the following explanation for the MRFC: "From a psych standpoint, the [claimant] can sustain focus, memory, basic social interaction and mental pace/persistence for simple, routine tasks." (R. 108.) This explanation was also included in Dr. Calderon's opinion on reconsideration. (R. 125.) Thus, while the ALJ rejected some of the individual findings of functional limitation noted by Ms. Flaherty and Dr. Calderon, the ALJ accounted for the ultimate conclusion drawn by Ms. Flaherty and Dr.

Calderon -- that plaintiff's mental limitations are accommodated by limiting him to simple, routine tasks.

Furthermore, the ALJ's analysis clearly demonstrates that his RFC finding was not based on impermissible speculation, but rather, his assessment of the medical records, including the opinion evidence.[12] The ALJ did not err in rejecting certain of Dr. Calderon's findings. As noted supra, "[a]n ALJ may accept some portions of a medical source's opinion while rejecting other opinions from the same source." Connors, 2017 WL 4400758, at *5. Thus, the ALJ was permitted to weigh the opinion in the manner he did. See 20 C.F.R. 404.1527(c) (setting forth factors for weighing medical opinions).[13] See also Armbruster v. Colvin, 2016 WL

---

[12]  The court is also not persuaded by plaintiff's argument that the ALJ improperly relied upon lay opinion in formulating the RFC. The Commissioner's regulations in effect at the time of the ALJ's decision clearly state that the responsibility for assessing a claimant's RFC lies with the ALJ. See 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). Subsequent opinions in this Circuit reiterate that "[t]he ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006) (not precedential) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties."); Mays v. Barnhart, 78 F. App'x 808, 813 (3d Cir. 2003) (not precedential) ("[T]he ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion.") (citing 20 C.F.R. §§ 404.1527(e), 404.1546(c)). See also Lewis v. Berryhill, 2018 WL 3447177, at *4-5 (E.D. Pa. July 17, 2018) ("The ALJ was 'not bound to accept the opinion or theory of any medical expert,' but rather could 'weigh the medical evidence and draw his own inferences.'") (citing Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986); Chandler, 667 F.3d at 361-62); Cleinow v. Berryhill, 311 F. Supp. 3d 683, 686 (E.D. Pa. 2018) (holding that an "ALJ is not restricted to adopting the conclusions of a medical opinion in making an RFC determination" where "the ALJ properly considered Plaintiff's medical records as a whole in determining Plaintiff's RFC, and was not required to rely on a specific medical opinion"); Northington v. Berryhill, 2018 WL 2159923, at *1 n.l (E.D. Pa. May 10, 2018) (finding that the ALJ did not err by "draw[ing] a medical conclusion in lieu of a doctor; she simply used medical evidence to craft an RFC").

[13]  Contrary to plaintiff's assertion, the ALJ did not err in failing to discuss each of the factors listed in 20 C.F.R. § 404.1527(c) when considering the opinion evidence. See Sutherland

17

5930913, at *7 (E.D. Pa. Oct. 12, 2016) (finding no error in the ALJ's attribution of various amounts of weight to the opinion evidence). Instead, the ALJ's analysis demonstrates that although the medical records document that plaintiff received mental health treatment, the evidence as a whole, including plaintiff's self-reports that he attended sporting events, went to the gym to exercise, used public transportation, and shopped in stores, as well as plaintiff's active participation in group therapy classes and unremarkable mental status exams, see, e.g., R. 665, 770-75, 794-96, 804-05, 1228-30, does not support plaintiff's claims of functional limitations.

The court is mindful that this court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). This court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr., 806 F.2d at 1190-91. See Chandler, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). However, plaintiff essentially seeks to have this court re-weigh the evidence and reach a different conclusion. A reviewing court may not set the Commissioner's decision aside if it is supported by substantial evidence, even if the court would have decided the factual inquiry

---

v. Comm'r Soc. Sec., 2019 WL 4733048, at *4 (3d Cir. Sept. 27, 2019) (not precedential) ("Although the ALJ did not specifically identify each factor, all relevant factors were considered throughout the lengthy, detailed opinion. [T]he ALJ conducted a thorough examination of the record and appropriately considered the relevant factors.") (internal citation omitted).

Furthermore, to the extent plaintiff asserts the ALJ erred by failing to recontact Dr. Calderon, the court is likewise not persuaded. The regulations provide that an ALJ may recontact a medical source for clarification, if such clarification is needed to make the disability determination. See 20 C.F.R. § 404.1520b(b). There is nothing in the record here to indicate the ALJ was unable to make the disability determination based on the evidence in the record. See id.

differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). In reaching his RFC determination, the ALJ acted in accordance with the Commissioner's regulations and Third Circuit case law. Substantial evidence supports the ALJ's analysis. See Biestek, 139 S. Ct. at 1154 (Substantial evidence "means -- and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Remand is not warranted.[14]

## V.  CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are supported by substantial evidence. Accordingly, plaintiff's Request for Review will be denied.

An appropriate Order accompanies this opinion.

BY THE COURT:

__/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

---

[14] Plaintiff's claim that the ALJ should have afforded plaintiff enhanced credibility due to his work history, see Pl.'s Br. at 15-16, also does not justify remand. The court notes that work history "is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints." Lee v. Astrue, 2012 WL 4932019, at *8 (E.D. Pa. Oct. 17, 2012) (quoting Thompson v. Astrue, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010)). "Indeed, a claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility." Id. See also Brown v. Colvin, 2017 WL 2547304, at *5 (D. Del. June 13, 2017) ("Although case law has indicated that strong work history can play a role in the ALJ's decision, it only added to the claimant's credibility when substantial evidence of a disability already existed.") (citing Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979)). In the present case, the ALJ properly evaluated plaintiff's symptoms, clearly demonstrating how he found plaintiff's complaints to be inconsistent with the evidence of record. Furthermore, "no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." Marion v. Berryhill, 2018 WL 2218868, at *1 n.1 (E.D. Pa. May 15, 2018) (citing Schuster v. Astrue, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012)).

19